UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EFREN SUAREZ RANGEL,<br><br>Defendant. | No. 4:18-CR-6002-SMJ<br><br>**ORDER DISMISSING INDICTMENT**<br><br>**U.S. MARSHALS ACTION REQUIRED** |

Before the Court is United States Attorney's Office (USAO)'s Motion for Pretrial Detention, ECF No. 41. The Court held a hearing on the motion on March 16, 2018. The Court denied the motion, dismissed the indictment, and ordered Mr. Rangel released. This order memorializes and supplements the Court's oral ruling.

Defendant Efren Suarez Rangel is a citizen of Mexico present in the United States illegally. Mr. Rangel was indicted on charges of two counts of distribution of 50 grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1)(b)(1)(A)(viii) and (b)(1)(B)(viiii). While in custody on these charges, Immigration and Customs Enforcement (ICE) placed a detainer on Mr. Rangel. Following a detention hearing, Magistrate Judge Dimke ordered Mr. Rangel released on bond subject to conditions imposed in her order of release pursuant to the Bail Reform Act (BRA), 18 U.S.C. § 1341 *et seq.* ICE took custody of Mr.

ORDER - 1

Rangel upon his release from Department of Justice (DOJ) custody and transported him to Tacoma, where he was detained pending removal proceedings.

Although ICE elected to pursue immigration proceedings, the USAO did not dismiss the criminal indictment. As a result, on March 1, 2018, the Court held a pretrial conference in the criminal matter and Mr. Rangel failed to appear. Both parties acknowledged Mr. Rangel's absence was due to his detention in ICE custody. The Court issued a warrant for Mr. Rangel's arrest. When Mr. Rangel appeared on the arrest warrant, the USAO once again moved for Mr. Rangel's pretrial detention, giving rise to the instant proceedings.

At the detention hearing, the USAO indicated that ICE intends to reassume custody of Mr. Rangel if he is once again released pending trial. Accordingly, in addition to reviewing Mr. Rangel's eligibility for pretrial release under the BRA, this matter also requires the Court to resolve the conflict between the USAO and ICE in the execution of their respective statutory mandates.

**FACTS**

On January 10, 2018, Mr. Rangel was indicted on two counts of distribution of 50 grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1)(b)(1)(A)(viii) and (b)(1)(B)(viiii). ECF No. 1. These offenses carry a mandatory minimum of 10 and 5 years, respectively. Mr. Rangel made his initial appearance pursuant to the arrest warrant and was arraigned. ECF No. 11. The

USAO filed a motion for Mr. Rangel's pretrial detention, citing to the rebuttable presumption under 18 U.S.C. § 3142(e). ECF No. 8. A detention hearing was held before Magistrate Judge Dimke on January 18, 2018.

Magistrate Judge Dimke denied the USAO's motion for detention and released Mr. Rangel on a number of standard and special conditions of release. ECF No. 23. Special condition six provided,

> In the event that ICE takes physical custody of Defendant, Defendant could be detained outside of the Eastern District of Washington. If Defendant is taken into physical custody by ICE, Defendant should be made available in the Eastern District of Washington for further proceedings herein until this matter is resolved. *See* 18 C.F.R. § 215.3.

*Id.*

On January 18, 2018, the USAO advised immigration authorities of the magistrate court's release conditions and provided a copy of the order the following day.

On January 25, 2018, following a *Nebbia* hearing, Magistrate Judge Dimke determined that Mr. Rangel had sufficiently established a source of funds for bail and ordered his release. ECF No. 28. Mr. Rangel was released the following day after posting the percentage bond and filing the AO 1992 form. ECF Nos. 29 & 31.

On January 29, 2018, ICE took custody of Mr. Rangel pursuant to an immigration detainer following his release from DOJ custody. ICE transported Mr. Rangel to the Northwest Detention Center in Tacoma, Washington.

ORDER - 3

Mr. Rangel appeared before the assigned Immigration Judge on February 23, 2018. Mr. Rangel's retained counsel requested a continuance of the immigration hearing as well as the detention hearing. The Immigration Judge reset the hearings for March 16, 2018, and Mr. Rangel was detained pending the new hearing.

On February 20, 2018, Mr. Rangel's appointed counsel in this matter filed a motion to continue trial and the pretrial conference. ECF No. 32. The motion indicated that defense counsel had encountered difficulty meeting with Mr. Rangel due to his detention in ICE custody. *Id.* The Court held a pretrial conference on March 1, 2018. Mr. Rangel failed to appear for the pretrial conference. Both parties acknowledged that Mr. Rangel's absence was due to his detention in ICE custody. The Court directed issuance of a no bail arrest warrant based on Mr. Rangel's failure to appear. ECF No. 38. The Court denied defense counsel's motion to continue because Mr. Rangel had not executed a speedy trial waiver.

Mr. Rangel was processed on the warrant on March 4, 2018, and transferred back into the custody of the United States Marshals Service. The USAO filed a renewed motion for detention, ECF No. 41, and Mr. Rangel made an initial appearance on March 8, 2018, ECF No. 42. A detention hearing was scheduled for

March 9, 2018. ECF No. 43. On March 9, 2018, Mr. Rangel was ordered detained pending a hearing on the motion for detention before this Court. ECF No. 47.

The Court ordered the parties to provide briefing on the issue of pretrial detention, specifically requesting the parties to address "proposed remedies should ICE once again fail to produce Mr. Rangel for matters in this Court." ECF No. 48. The Court ordered supplemental briefing on potential constitutional issues on March 15, 2018. ECF No. 55.

## DISCUSSION

**A.     Mr. Rangel is entitled to pretrial release under the BRA.**

The magistrate court determined that Mr. Rangel was entitled to pretrial release subject to conditions pursuant to the BRA. The USAO did not appeal this decision. However, the matter of Mr. Rangel's detention is once again open for review following his appearance on the Court's arrest warrant following the pretrial conference. The USAO urges this Court to disregard the magistrate's previous order and grant its motion for pretrial detention. While the Court has undertaken an independent review of Mr. Rangel's eligibility for pretrial detention, it ultimately reaches the same conclusion as Magistrate Judge Dimke: Mr. Rangel is entitled to pretrial release because the USAO cannot meet its burden to show that no condition or set of conditions can reasonably ensure his appearance or the safety of the community.

ORDER - 5

The BRA dictates that a defendant is entitled to pretrial release unless a judicial officer judge finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). To determine whether conditions of release could reasonably assure Defendant's appearance in court and the safety of the community, the Court considers four factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger the defendant would present to the community if released. *Id.* § 3142(g). The weight to be accorded to each factor rests in the Court's discretion. *United States v. Gentry*, 455 F. Supp. 2d 1018, 1020 (D. Ariz. 2006). However, the Ninth Circuit has directed that the weight of the evidence is the least important factor. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

The BRA provides for a rebuttable presumption of pretrial detention for defendants accused of committing certain offenses. 18 U.S.C. § 3142(e). Because Mr. Rangel was indicted for violations of the Controlled Substances Act with a maximum sentence of greater than ten years, a rebuttable presumption of detention without bail applies in this case. *Id.* § 3142(e). This presumption shifts a burden of production to Mr. Rangel, but the burden of persuasion remains with the

USAO. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g).'" *Id.* (quoting *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991)).

The first two § 3142(g) factors—the nature and seriousness of the charged offenses and the weight of the evidence—weigh against Mr. Rangel's pretrial release. The alleged offenses concern multiple transactions involving relatively significant amounts of methamphetamine. ECF No. 1. Although the least important factor in the analysis, the weight of the evidence alleged in this case appears to be fairly substantial. The USAO asserts that officers recovered roughly six pounds of methamphetamine and approximately twenty-thousand dollars from Mr. Rangel's residence. ECF No. 50 at 9–10. The Court considers the presumption implicated under § 3142(e) as a further indication of the seriousness of the crimes alleged.

The next factor, Mr. Rangel's personal history and characteristics, strongly favors pretrial release. Mr. Rangel has presented evidence of his ties to the community and demonstrated commitment to remaining in the area. Mr. Rangel originally came to the United States illegally in 1994 and has not returned to

ORDER - 7

Mexico since. His parents, siblings, children, and wife all live in the Tri-Cities area. Mr. Rangel maintained a full time job as a farm equipment operator for the past seven years, and his employer submitted a letter in support of his release. Based on Mr. Rangel's very strong ties to the area and the fact that he has made no prior attempts to return to Mexico, the Court finds it is highly unlikely that he will flee if released pretrial.

With respect to the last factor, the USAO has presented no evidence that Mr. Rangel poses an ongoing threat to any individual or the community. There are no allegations before the Court related to firearms, prior crimes of violence, or threats to other individuals. It is also notable that Mr. Rangel has no prior criminal record with the exception of an infraction over ten years ago for using a cell phone while driving. In recognition of this, the pretrial services report indicates release with standard and special conditions as a possibility for mitigating any remaining concerns regarding continued appearance or ongoing criminal activity.

Having conducted an independent review of the factors outlined above, the Court finds that the balance of the factors weighs in favor of Mr. Rangel's pretrial release. Although the nature of the offense and the weight of the evidence favor continued detention, Mr. Rangel's personal history and characteristics combined with the relatively low threat he poses if released favor pretrial release. The BRA makes clear that "[o]nly in rare cases should release be denied, and doubts

regarding the propriety of pretrial release are to be resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015); *see also United States v. Chavez*-Rivas, 536 F. Supp. 2d 962, 965 (E.D. Wis. 2008) (observing that "the court must resolve all doubts regarding the propriety of release in the defendant's favor"). Accordingly, the Court finds that Mr. Rangel is entitled to pretrial release under the BRA.

**B.     Mr. Rangel's detention in ICE custody violates his right to pretrial release under the BRA.**

At the detention hearing, the USAO explained that, if Mr. Rangel is again released pending trial, ICE intends to reassume custody of Mr. Rangel pending his removal. This is consistent with ICE's actions following Mr. Rangel's initial pretrial release. However, such pretrial detention violates Mr. Rangel's rights under the BRA, which requires the executive to elect removal in lieu of criminal prosecution or defer removal until after trial and sentencing are complete.

If a defendant is entitled to pretrial release under the BRA, that defendant may not be detained in immigration custody while the criminal case is pending. As noted above, the BRA establishes a framework for the pretrial status of defendants evidencing a strong preference for pretrial release. Section 3142(a) provides judicial officers with four options for a defendant's pretrial status: release on recognizance, release on conditions, temporary detention to permit deportation/removal, and detention. Section 3142(b) states that a defendant shall

be released on personal recognizance unless no condition or set of conditions can reasonably assure the defendant's appearance or the safety of the community. Section 3142(c) lists the conditions of release that may be imposed if the defendant is not released under subsection (b) with the mandate that the court should impose the least restrictions necessary.

Section 3142(d) makes the dichotomous nature of criminal and immigration proceedings clear. Under this section, if a judicial officer determines that (a) the defendant is not a citizen of the United States or lawfully admitted for permanent residence, and (b) he may flee or pose a danger to any other person or the community, then the judicial officer "shall order the detention of such person for a period of not more than ten days." 18 U.S.C. § 3142(d). During this period of detention, ICE may elect to take the defendant into immigration custody to pursue immigration proceedings. *Id.* If, however, ICE "fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." *Id.*

The language in § 3142(d) thus makes clear that when a defendant is treated "in accordance with the provisions of" the BRA, "other provisions of law governing release pending trial or deportation or exclusion proceedings" do not

apply. In other words, if the BRA applies, statutes governing detention related to immigration proceedings do not. The BRA applies whenever a defendant is brought before a judicial officer for having committed an offense against the United States. *See* 18 U.S.C. § 3141 (referencing 18 U.S.C. § 3041). The contrapositive of this statement instructs that if the rules governing deportation or immigration proceedings apply, the BRA does not. The upshot of this is simple: the BRA requires the Executive Branch to decide between pursuing a criminal prosecution or immigration proceedings. The Executive cannot pursue both at the same time.

Section 3142(d)'s title reaffirms this interpretation. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("We also note that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute."). Congress titled the section "Temporary Detention to Permit Revocation of Conditional Release, Deportation, or Exclusion." If ICE elects to take custody of a defendant during the ten-day temporary detention period authorized under the statute, it must be for the purpose of "deportation or exclusion." ICE may not take custody of a criminal defendant for the purpose of detaining the defendant pending trial.

Several other courts to consider the issue have similarly concluded that administrative pretrial detention in immigration custody violates a criminal

ORDER - 11

defendant's right to pretrial release under the BRA. *See United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1133 (M.D. Fla. 2015) (holding pretrial deportation proceedings violated, among other things, defendant's rights under the BRA); *United States v. Blas*, No. 13-0178-W-C, 2013 WL 5317228 at *6 (S.D. Ala. Sept. 20, 2013) ("[N]othing permits ICE (or any other part of the Executive Branch) to disregard the congressionally-mandated provisions of the BRA by keeping a person in detention for the purpose of delivering him to trial . . . when the BRA itself does not authorize such pretrial detention."); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1179 (D. Or. 2012) (holding that, where a magistrate judge determined a noncitizen criminal defendant did not pose a flight risk or a danger to the community, "there is no statutory basis under the BRA for him to be further detained by ICE").

In each of the above-cited cases, the defendants were charged with illegal reentry in violation of 8 U.S.C. § 1326. The USAO argues that this distinction is significant because the criminal charge for illegal reentry and administrative consequence of removal are two paths to remedy the same conduct. However, the criminal conduct charged does not impact the statutory analysis under the BRA. Instead, each decision cited above turned on the fact that the BRA prohibits ICE from detaining a criminal defendant for any purpose other than deportation or removal. Thus, in each of the above-cited cases, the outcome was driven by the

ORDER - 12

courts' assessment that the executive must elect whether to pursue immigration proceedings or criminal prosecution.

The conclusion that the BRA requires the executive branch to defer removal proceedings when DOJ elects to pursue criminal prosecution is also supported by other regulations authorized under the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq*. Deportation control orders provide perhaps the most persuasive example. A deportation control order provides a mechanism by which prosecutors may prevent a noncitizen from leaving the country. The regulations state that deportation of a noncitizen who is a party to a criminal case pending in a United States court shall be "deemed prejudicial to the interests of the United States." 8 C.F.R. § 215(3)(g). The regulations further instruct ICE not to remove such a defendant without the prosecuting official's consent. *Id.* These regulations indicate the Executive Branch's determination that criminal proceedings take priority over deportation or removal. *See Trujillo-Alvarez*, 900 F. Supp. 2d at 1178 (noting the same).

Finally, this reading of the BRA promotes judicial economy and the primacy of a defendant's constitutional rights when facing trial. As this case aptly demonstrates, permitting the executive to proceed concurrently with a criminal prosecution and removal proceedings would result in a substantial waste of government resources. In this case, both ICE and the United States Marshals

Service have expended significant resources transporting Mr. Rangel between this district and the immigration detention center in Tacoma. The Court has held two separate detention hearings over the course of five days with respect to Mr. Rangel's detention pending trial. Likewise, Mr. Rangel's detention out of district has imposed substantial barriers to his ability to effectively consult with his court appointed counsel and present a defense to the charges he faces. Although Tacoma is not substantially farther than other areas court-appointed attorneys are expected to travel in this district, the fact remains that Mr. Rangel was detained out of district. Detaining criminal defendants out of district has the potential to disproportionately affect indigent defendants whose court-appointed attorneys do not have the time or resources to undertake out-of-district travel on a regular basis.

**C.    Dismissal of the indictment is the only remedy for the ongoing violation of Mr. Rangel's right to pretrial release under the BRA.**

Because ICE cannot, or will not, work cooperatively with the USAO to provide for Mr. Rangel's criminal prosecution in compliance with the BRA, the Court must fashion an appropriate remedy. "Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991). In *United States v. Hasting*, 461 U.S. 499 (1983), the United States Supreme Court recognized three bases underlying a court's inherent supervisory powers: "(1) To implement a

remedy for a violation of recognized rights; (2) to preserve judicial integrity by ensuring that a criminal conviction rests on appropriate considerations validly before the jury; and (3) to deter future illegal conduct." *United States v. Gonsalves*, 781 F.2d 1319, 1320 (9th Cir. 1986) *abrogated on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (citing *Hasting*, 461 U.S. 499). In the past, the Ninth Circuit read *Hasting* as limiting the court's inherent powers to these "three specific areas." *See W.R. Grace*, 526 F.3d at 509 n.9. However, the court has since changed course and now recognizes that nothing in *Hasting* limits the court's supervisory powers to the three mentioned areas. *Id.*

In its supplemental briefing, the USAO suggests that the Court could issue a writ of habeas corpus ad prosequendum to secure custody of Mr. Rangel in the days leading up to and throughout trial. ECF No. 57 at 4. While this proposed remedy would ensure Mr. Rangel's physical presence in the district—a substantial improvement on conditions to date—it would not remedy the prejudice imposed on Mr. Rangel by his pretrial detention. First, a writ would not solve the ongoing violation of Mr. Rangel's statutory right to pretrial release under the BRA. A writ will transfer custody of Mr. Rangel from DHS to DOJ. However, this Court has already ordered that Mr. Rangel be released on bond pending trial. DOJ cannot detain Mr. Rangel pending trial and comply with the Court's order directing pretrial release.

Speedy trial considerations also preclude alternative remedies. Trial in this matter is set for March 26, 2018. The Speedy Trial Act requires that the USAO try Mr. Rangel on or before March 29, 2018. Thus, on the date of the detention hearing, Mr. Rangel had only one business week to consult with his attorney and prepare for trial. If the Court allowed the prosecution to proceed, Mr. Rangel would be effectively forced to choose between his Sixth Amendment right to consult with counsel to prepare an effective defense and his right to a speedy trial.

Likewise, the remedy imposed by other courts facing similar violations is not viable in this case. In *United States v. Trujillo-Alvarez*, for example, the district court provided the executive a period of time to elect whether to pursue immigration proceedings or to proceed with the criminal prosecution. This remedy is once again ineffective given the Speedy Trial Act deadlines in this case.

Because the Court finds no lesser remedy available, dismissal of the indictment is appropriate under the Court's supervisory powers.

Accordingly, **IT IS HEREBY ORDERED**:

**1.** USAO's Motion for Pretrial Detention, **ECF No. 41**, is **DENIED.**

**2.** The Indictment, ECF No. 1, is **DISMISSED WITHOUT PREJUDICE**.

**3.** Defendant Efren Suarez Rangel is ordered **RELEASED** from custody.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, Magistrate Judge Dimke, and the United States Marshals Service.

**DATED** this 21st day of March 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 17